The State ex rel. Fenlon v. Cummiskey.

---

The State *ex rel.* John Fenlon *et al.*, Respondent, v. James Cummiskey, *et al.*, Appellants

St. Louis Court of Appeals, February 5, 1889.

1. .Payment: VOLUNTARY : ATTORNEY AND CLIENT. A commissioner in partition who pays part of a distributee's share to her attorney without her knowledge or authority, has no right to withhold the sum so paid, in a settlement and payment of the distributee's share in his hands.

2. **Partition:** COMMISSIONER: UNAUTHORIZED PAYMENT. A written request to the circuit court, signed by a distributee, for an order directing the custodian of the partition fund to pay a sum to the person therein named, upon which request no action was taken by the circuit court, furnishes no authority to the commissioner to make the payment so indicated; and his making the same voluntarily will entitle him to no credit in his final settlement and payment of the distributee's share.

3. **Evidence:** RECEIPT. A receipt for money paid is not conclusive against the signer, so as to exclude other testimony showing the real facts in the case.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*William B. Thompson,* for the appellants.

The pleadings in this case admitted that plaintiffs have signed a receipt and release to the agent of defendant with full knowledge that the deductions in controversy in favor of William McCully and William S. Stewart had been made, and the court erred in overruling defendant's objection to any evidence being offered in the case. *Dean v. Carpet Co.,* 13 Mo. App. 175; Story Ag., sec. 300; *Claflin v. McDonnough,* 33 Mo. 412; *Mace v. Cincinnati,* 1 Ohio St. 268; *Wolf v. Marshall,* 52 Mo. 167; *Reisenleiter v. Lutherische Kirche,* 29 Mo. App. 291; *Savings Institution v. Kehlor,* 7 Mo. App. 158; *Ragin v. Baldwin,* 8 Cent. L. J. 309. The letter of Cummiskey to plaintiffs was exactly similar to the instructions given the Adams Express Company, which fully explained the payment of the money and the condition upon which the plaintiffs were entitled to the money. The acceptance of the money by the plaintiffs with knowledge of the condition under which they were entitled to it constituted a voluntary payment of the sums of money deducted, so that plaintiffs could not recover in this case, because they could not restore Cummiskey or his agent in the condition they were

before the payment was made, because the deductions were voluntarily made by them. Story Ag., sec. 300 ; *Savings Institution v. Kehlor*, 7 Mo. App. 158 ; *Moore v. McCullagh*, 8 Mo. 401 ; *Adams v. Helm*, 55 Mo. 468 ; *Kronenberger v. Binz*, 56 Mo. 157. The court in this cause instructed the jury to find in favor of the plaintiffs for the twenty dollars paid to William S. Stewart which was also included in this receipt and payment. This was error. Because it ignored the effect of the receipt and the deduction authorized by the receipt which constituted a voluntary payment. Because it was a payment made to an attorney of record on behalf of one of the plaintiffs in the case without any notice of a want of authority. The court committed error in the instruction in reference to the payment of the one hundred and twenty-five dollars. Because the court ignored the effect of the payment made through the Adams Express Company and the voluntary deductions authorized by the plaintiffs. Because the previous written authority in the paper signed by the plaintiff to pay the money to McCully fully authorized the commissioner appointed by the court to make the payment to McCully. Because there was no evidence that the authority was revoked before the payment was made. Because there was positive evidence to show that the payment was made before notice of any objection to pay the same. Because if an objection had been made it was too late as the transaction was executed when the receipt was signed by the plaintiffs through the agency of the Adams Express Company. Another rule exists which precludes the recovery of this money, and that is that the sum of money paid voluntarily under no mistake of facts cannot be recovered back. There could be no mistake, as the plaintiffs admit the receipt of Cummiskey's letter, which fully explains the deductions that were made, so that these deductions constituted an absolute payment of the money.

*Martin & Fauntleroy*, for the respondent.

The testimony of both plaintiff and defendants agreed that the twenty dollars paid to Stewart was not paid on the order or authority of Mrs. Fenlon, but by Cummiskey on his own motion and responsibility. As to the alleged payment of the one hundred and twenty-five dollars to McCully, on the written order of Mrs. Fenlon, we claim that the paper, exhibit A, which the defendants were pleased to designate and regard as her written order, was no more a written order and conferred upon Cummiskey no more authority to pay McCully any money than was any of the numerous show-bills posted on the fences in this city. But supposing that the paper, exhibit A., did constitute an authority to Cummiskey to pay McCully the one hundred and twenty-five dollars ( as was erroneously assumed by the trial court in its instructions ), unless such authority was revoked before McCully was paid, yet we take it that it cannot be seriously contended that said paper, exhibit. A., warranted Cummiskey in paying McCully, provided Cummiskey was notified of Mrs. Fenlon's objection thereto before he paid McCully. The letter was notice to him whether he read it or not. *Henry County .v. Allen*, 50 Mo. 231 ; *Koonts v. Bank*, 51 Mo. 275. And the words "minus one hundred and forty-five dollars," written in the receipt, which Cummiskey received and examined before paying McCully also constituted notice to him. So that the uncontradicted proof was that Cummiskey paid McCully after notice not to do so. There was no pretense of any right on Cummiskey's part to withhold from her the six hundred and fifty-one dollars, and his purpose to compel her to accede to the deductions in dispute by withholding from her the six hundred and fifty-one dollars until she did so, was neither lawful nor praiseworthy.

THOMPSON, J., delivered the opinion of the court.

This action is brought on the bond of James Cummiskey, as a special commissioner in partition, to recover the sum of one hundred and forty-five dollars alleged to have been received by the principal defendant in the character named, as the distributive share of the plaintiff, Frances Fenlon, and not paid over to her. The answer admits the preliminary allegations of the petition about the partition and admits that, by the decree in partition, Mrs. Fenlon was entitled to seven hundred and ninety-six dollars, out of the proceeds of the sale of the real estate by the special commissioner; but denies that he has failed or refused to account for or pay over to her the sum of one hundred and forty-five dollars and denies that this or any other sum is due to her.  It then sets up that, on the twenty-first day of July, 1885, the defendant Cummiskey, as special commissioner in partition, appointed by the circuit court, paid to Mrs. Fenlon the sum of six hundred and fifty-one dollars, being the balance due and owing to her of her distributive share of $796.01 in the hands of the said commissioner. It sets up that the sum of twenty dollars had, before that time, been paid, on her order and by her request, to William S. Stewart, her attorney of record in the partition suit, on account of his services in the said cause; and that the sum of one hundred and twenty-five dollars had been paid by the commissioner to William McCully, on account of the written order of Mrs Fenlon, which alleged order was filed as an exhibit to the petition.

The three sums above named, it will be perceived, amount to the sum of seven hundred and ninety-six dollars (saving one cent, which may be disregarded), which is admitted to have been the total amount of Mrs. Fenlon's share of the proceeds of the sale for partition.

This special matter was put in issue by a reply, which contained other avertments which may be disregarded. The substantial issues for trial therefore were:   (1) Whether the defendant Cummiskey, in his character of commissioner for partition, had paid to William S. Stewart the sum of twenty dollars on the order or by the request of Mrs. Fenlon.   (2)   Whether he had paid to William McCully one hundred and twenty-five dollars on account of the written order of Mrs. Fenlon disclosed in the paper filed with the answer and marked exhibit A.

I.   Upon the first issue, whether Mr. Cummiskey had paid twenty dollars to Mr. Stewart on the order or at the request of Mrs. Fenlon, it is to be observed that no evidence was adduced showing any such order or request, but the evidence of Mr. Cummiskey himself shows that there was no such order or request.   He testified;   "The payment I made to Mr. Stewart was previous to the confirmation by the court; the payment was made out of courtesy—that is all; it was a request on his part."   The circumstances that Mr. Stewart may have been the authorized attorney of record of Mrs. Fenlon (which she denies) is quite immaterial, since Mr. Cummiskey had no authority to disburse her money in his hands as trustee for her, in the payment of any debts due by her, albeit to her attorney in the case. The circuit court was therefore in the right in directing the jury to find for the relators as to this item, and this item may accordingly be laid out of view.

II.   As to the second item, the paper referred to in the answer as containing the written order of Mrs. Fenlon to pay one hundred and twenty-five dollars to William McCully, was not a written order directed to Mr. Cummiskey at all, but was a paper directed to the judge of the circuit court and signed by four of the parties to the partition proceeding, requesting the court to make an order for the payment, among others, of the

sum of one hundred and twenty-five dollars, on behalf of Mrs. Fenlon, to Mr. McCully. This paper, after being entitled in the partition suit, ran as follows: "Now come the undersigned parties to the above suit, and pray for an order of this court upon the sheriff of St. Louis city, or party or parties in custody of proceeds of sale of real estate in said suit described, to pay to William McCully from the moneys due us as distributees thereof, the amounts set opposite our name respectively, to-wit: Mary Ann Kilpatrick, $375.00; Frances and John Fenlon, $125.00; Samuel Kilpatrick, $125.00; Robert Kilpatrick, $125.00; Sarah Kilpatrick, $125.00, —to reimburse said William McCully for money advanced us by him." The paper was signed by Mary Ann Kilpatrick, Frances Fenlon, Sarah Kilpatrick and Nancy Kilpatrick. Endorsed on it when put in evidence were receipts as follows:—

"Received, July 21, 1885, of James Cummiskey, $625.00, being amounts due on foregoing instrument, as thereupon appears, to-wit: ·

| | |
|---|---|
| Mary Ann Kilpatrick | $375.00 |
| Sallie Kilpatrick | 125.00 |
| Nancy Kilpatrick | 125.00 |
| | $650.00 |

"WILLIAM McCULLY."

"Received, Aug. 27, 1885, of James Cummiskey, $125.00, being amount due from Frances Fenlon, on foregoing instrument.

"WILLIAM McCULLY."

It is to be observed that this instrument is not directed to Mr. Cummiskey, and is not an order to him by Mrs. Fenlon to pay over any money to Mr. McCully on her behalf. It is further to be said that no order was ever made by the circuit court, as requested in this instrument. Nevertheless, Mr. Cummiskey assumed,

on what conception of duty we do not understand, nor does his evidence disclose, to withhold from the amount of money coming to Mrs. Fenlon, as her distributive share of the proceeds of the sale in partition, this sum of one hundred and twenty-five dollars, and pay it over to Mr. McCully for her. And he seems to have conceived that it was his duty to do this for her whether she would have it so or not. For what he did in the premises was this : When the time came to pay over to Mrs. Fenlon her distributive share, she and her husband were at Providence, Rhode Island. Mr. Cummiskey transmitted by express to Providence, in currency, the sum of six hundred and fifty-one dollars, together with the following receipt to be signed and returned by the agent of the express company *before the money should be paid over :*

"Received of James Cummiskey, special commissioner in partition, case of *Mary A. Reed and John Reed v. Mary Ann Kilpatrick*, and numbered 66418, Room 5, this twenty-first day of July, 1885, seven hundred and ninety-six and $\frac{1}{100}$ dollars, being in full of my distributive share in the above entitled cause.

"$796.01."

"The above receipt must be signed as indicated, attested by one witness, and delivery can then be made of $651.00. Failure to obtain the signatures as shown will require the return of the $651.00 to the undersigned.

"July 22, 1885.

"JAMES CUMMISKEY,

. "Special Commissioner, 617 Chestnut St."

"Please have receipt signed as instructed, collect all charges from John W. Fenlon, and deliver money to him."

This paper, together with the six hundred and fifty-one dollars, was tendered by the express agent to Mrs. Fenlon and her husband, and on their signing it ( Mr.

Fenlon as witness ), the express agent paid over to them the money, $651.01. When this receipt was put in evidence it contained, after the figures of $796.01, the words and figures, "minus $145." How these words and figures got upon the instrument is a matter as to which the evidence is in dispute. The express agent testifies that they were not written on the instrument while it was in his hands or before it was returned by him to Mr. Cummiskey; but the evidence for the relators tends to show that it was written on the instrument at the time Mrs. Fenlon received the money. The most that can be said of this matter is that it presented a disputed question for the consideration of the jury.

To make this transaction clearer, it should be observed that when Mr. Cummiskey transmitted this money to Providence by express with this conditional receipt, he also wrote and mailed from St. Louis to Mrs. Fenlon, at Providence, the following letter : "July 24, 1885. Mrs. Fenlon—Madam : I sent you yesterday per Adams express Company, six hundred and fifty-one dollars, being your proportion of the proceeds of sale of property. If the deductions of twenty dollars and one hundred and twenty-five dollars be not correct, and you and your husband decline to sign the receipt as presented, the Adams Express Company will return the amount. The deduction of one hundred and twenty-five dollars is made in accordance with an agreement signed by you, your mother and two sisters, with Mr. McCully. I have settled with your mother and sisters as above. Respectfully, JAMES CUMMISKEY."

The evidence on behalf of the relators is to the effect that the receipt which was tendered by the express company and which was signed and returned, was signed under protest. There was considerable other evidence as to what was said at the time of the signing of it, but it is sufficient to let it rest with this statement.

This receipt was signed by Mrs. Fenlon, and coun-
ter-signed by her husband as witness, on the twenty-
eighth of July, 1885,. On the following day she
wrote and forwarded, by mail from Providence to Mr.
Cummiskey at St. Louis, the following letter : "EAST
PROVIDENCE, July 29, 1885.—Mr. James Cummiskey—
Sir : I received your letter of twenty-fourth, and also
six hundred and fifty-one dollars, and signed a receipt
for same, being part payment of my proportion allowed
me by the court. As the deductions are not correct, I
trust you will advance me the balance, one hundred
and forty-five dollars, and avoid further trouble.
Respectfully, FRANCES FENLON." This letter was
delivered at Mr. Cummiskey's office, in St. Louis, while
he was out of town. According to his testimony, when
he returned he went to the express company's office
and procured the receipt. He did not read the receipt
beyond noticing the signatures, but supposing that the
signing of this receipt by Mrs. Fenlon and her husband
was tantamount to an authority to him to pay the one
hundred and twenty-five dollars due Mr. McCully, he
paid it over to the latter and took his receipt for the
same. At the time when he so paid it over, he had not
examined his mail, which included this letter of July
29, from Mrs. Fenlon, and he did not therefore know
that she had prohibited him from making the payment
to Mr. McCully. From his testimony given on a former
trial, and shown on his cross-examination, it appears
that "a day or two" elapsed between the return of Mr.
Cummiskey to St. Louis and the paying over of the
money to Mr. McCully. Soon after the money had
been paid over, Mrs. Fenlon, who had returned to St.
Louis, called on Mr. Cummiskey and demanded the
remaining amount due to her from him, and demanded
to know why he had paid the one hundred and twenty-
five dollars to Mr. McCully notwithstanding her letter
of July 29 ; when he, according to her testimony, told

her that the letter did not amount to anything, but according to his own testimony, explained to her that he did it because she had signed the agreement ( exhibit A.) and because of a conversation he had with her some two months before, and by reason of the fact that the other heirs had authorized the payments above stated to Mr. McCully.

We need not go into the testimony further with regard to the item of one hundred and twenty-five dollars. It is to be kept in mind that the paper, marked exhibit A., being a request to the court to order the sheriff, or whoever might be the custodian of the proceeds of the sale in partition, to pay over the sums named to McCully, and never having been acted upon by the court, is to be regarded as an abortive paper; and, as it was not addressed to Mr. Cummiskey, it conferred no authority on him whatever to pay the sum of one hundred and twenty-five dollars out of Mrs. Fenlon's distributive share to Mr. McCully.

Then, as to the effect of the express company's receipt. The case has been argued before us orally and in writing, at great length, on the theory that the signing of the receipt in the hands of the express agent, when the six hundred and fifty-one dollars was paid over to her, was tantamount to an authorization to Cummiskey to pay over the one hundred and twenty-five dollars to McCully, and tantamount to a ratification of his payment of the twenty dollars to Stewart. In our opinion no such effect can be ascribed to the paper. A receipt for money is one of the least conclusive instruments of writing of which the law takes notice. It can always be contradicted or explained by parol. This was merely a receipt for money, and, in the absence of any extrinsic facts characterizing the transaction, it did not conclude Mrs. Fenlon from showing that the sum therein described to have been received had not actually been received by

her. This conclusion is indisputable, unless there is something in the transaction to take this paper out of the category of a mere receipt for money, and to place it in the category of a contract founded upon a consideration. · That it can not take rank in any sense as a contract is too plain for argument. If there had been a question fairly in dispute between Mr. Cummiskey and Mrs. Fenlon as to whether she was entitled to receive six hundred and fifty-one dollars from him, then he might have tendered that amount conditionally, and her acceptance of it and her quittance would have been conclusive upon her as to what was in dispute. But as to her right to receive six hundred and fifty-one dollars there was no dispute on any theory. On any theory which has been advanced by either party, he held that sum of money belonging to her and was bound to pay it over to her unconditionally. Now, what did he do? Instead of tendering it to her unconditionally, he in effect reached it out to her in one hand, and reached out to her in the other hand a receipt by which she acknowledged having received from him not merely the six hundred and fifty-one dollars which he offered her, but seven hundred and ninety-six dollars and one cent, and he in effect said to her: " If you do not sign this receipt for the greater amount, you can not have the lesser amount, although I admit that the lesser amount is due to you." He was bound to pay her the six hundred and fifty-one dollars unconditionally; and the getting of this money by her can not on any principle be raised to the dignity of a consideration moving her to release the remainder which was due to her.

But as to this larger sum of $796.01, it may be said with equal confidence, on the facts established by this record, that there was nothing whatever to compromise. There is no evidence that Mrs. Fenlon had, prior to the time when this receipt was tendered to her by the express agent, ever authorized Mr. Cummiskey to pay

the twenty dollars to Mr. Stewart or the one hundred and twenty-five dollars to Mr. McCully. Instead then of paying over the full amount which was due to her, he took the singular position that it was his duty in some way to collect from her funds in his hands the supposed amount which was due from her to Mr. McCully, and that it was also proper for him to require of her a ratification of his unauthorized act of paying over the twenty dollars to Mr. Stewart; and he deliberately said to her by his letter of July 24, and by the language of the receipt which he had placed in the hands of the express company : "Unless you ratify the payment of this twenty dollars to Mr. Stewart, and unless you authorize me to pay this one hundred and twenty-five dollars to Mr. McCully, you shall get nothing—the express company shall return the money to me." It is precisely upon this case that this defense has been predicated, and it is upon no better state of facts that this appeal has been prosecuted.

Giving the fullest possible effect to the signatures of Mrs. Fenlon and her husband upon the receipt which was returned to Mr. Cummiskey by the express company, it does not help out this defense ; for on the day following that on which she signed this receipt, she mailed to him the letter of July 29, and his testimony concedes that this letter and this receipt were received by him contemporaneously,—that is, on his return from his trip out of the city the letter of Mrs. Fenlon was among his mail, and he himself went to the express office and there obtained the receipt. The mere fact that he may, on the faith of the receipt, have paid over the money to Mr. McCully, in ignorance of the letter, if it were a fact (which the jury probably did not believe) would not help out his defense. The letter was a distinct notice to him not to pay the money over; and having received this notice before he paid the money over, it does not lie in his mouth to say that he had not

read it. On his own testimony, a day at least intervened between his arrival home and the paying over of the money to McCully. If in the meantime he had not read the letter of Mrs. Fenlon, it must be ascribed either to negligence or to a desire not to know its contents. But in point of law, negligent or obstinate ignorance is the same as actual knowledge. If notice is communicated to a person by letter, can he put the letter unopened in his pocket or leave it unopened on his desk, and be heard to say in a court of law that he has not received the notice which the letter imparts ?

In a record presenting such a state of facts and exhibiting no dispute as to any fact which is essential to the determination of the rights of the parties, our duty is discharged when we see that the verdict and judgment which were rendered in the trial court applied the law to the undisputed facts. It is not necessary that we should scrutinize the instructions or scan the intermediate rulings, the trial appearing to have been in all respects a fair one.

The judgment is accordingly affirmed. All the judges concur.